WIZARD, INC., *v.* FELDMAN.

Opinion delivered May 2, 1932.

*A. M. Coates,* for appellant.

*Bevens & Mundt,* for appellee.

BUTLER, J. The appellee, Herman Feldman, is engaged in the wholesale supply business in the city of Helena, Arkansas, and purchased from the appellant, Wizard, Inc., a quantity of insecticide called "Flyded." He signed a written order for the merchandise, which was accepted by the appellant, and the merchandise shipped on March 1st, in accordance with the terms of the order, and received by appellee in due time. The total sum for the goods ordered was $603.04, due within thirty days. Payment not having been made within this time, suit was instituted, and defense was made that the merchandise was purchased with the express agreement that it was to be held by Feldman for the account of the appellant, which agreed to send its representative to Helena for the purpose of putting on an advertising campaign, and with the further agreement that the merchandise was to be sold to the trade by the representative of the seller. It was alleged that the latter failed to comply with this agreement, which breach Feldman pleaded as a complete defense.

Subsequently, by amended answer, he interposed the additional defense that the merchandise was sold as a fly-killer, and under an implied warranty that it was fit for the purpose of killing flies, and that it wholly failed and was unfit for the purpose for which it was purchased.

On the trial, this defense was abandoned. There was a verdict and judgment for the appellee, from which judgment is this appeal.

The appellant introduced the original order for the merchandise, which recited that it was sold to the appellee and the purchase price of the same, and that "no terms valid not stated on this order: not subject to countermand." The only testimony for the appellee was that of himself and an employee. They testified that the contract was signed in duplicate, the original being retained by the salesman and a copy given to Feldman; that, before he signed the order, the salesman stated that he would put on an advertising campaign, and that "he would come down and conduct a specialty campaign to sell the goods." They testified that, after having signed the order, Feldman called attention to the fact that there was nothing said in the order about the representative of the seller conducting the specialty campaign, and that the salesman then stated that he was in a hurry then but would write the stipulation regarding the specialty campaign into the order before sending it in. They testified further that the goods were received, that they began to attempt to sell the same, and did sell some of it—how much not being shown by the testimony. The employee stated that it was a small percentage. Both of them testified that the salesman who had taken the order came back to Helena after the goods had been received, and said that he was going out the next morning "to do some work for us, but he didn't do it"; that they received a letter from him in the morning mail to the effect that he was called out of town, but would be back to sell them again; that he never came back.

A letter was introduced in evidence from Feldman to the appellant, dated July 19, 1930, in which, after referring to some previous letters, he stated that he was unable to sell the insecticide, and that in "about a month or more" the salesman came and told the employee he had come to sell that stuff, but had gone away without doing so, and asked that the appellant take back the goods. He complained that the customers would not pay for the goods they purchased—"they don't pay, or they

return it, or they wait till we pick it up"—and in conclusion asked the appellant for shipping instructions, and notified it that he was holding the goods for it.

The court instructed the jury that the burden was upon the defendant to establish the defense set up, namely, "that at the time the contract was entered into between the plaintiff and the defendant that the agent of the plaintiff agreed to insert certain things in the contract, as shown by the evidence, and did not do it as he agreed to do before sending in the order; if you find that the agent agreed to write that into the contract and failed to do it and sent it in, and that the company failed to comply, although you might find that this addition had not been inserted in the contract. If you find the company sent a man here to help them advertise it and sell it; if you find they sent a man here to advertise it and sell it, then you should find for the plaintiff. If you find that the plaintiff took the contract with the agreement with the defendant that he would write that in the order, and that he failed to do it, and that the company failed to send the agent down here to assist the defendant in making the sales, according to the clause to be written into the contract, then you should find for the defendant."

The record shows that counsel for the plaintiff requested the court to orally instruct the jury to the "extent that if Feldman sold a part of the merchandise in question, that such was a ratification of the contract, and they should find for the plaintiff, even though the salesman had agreed to write additional terms in said contract." The court refused "said instruction because the testimony did not show whether the sales were made before the agent came down here and failed to put on the campaign advertising it or after he came."

Upon the instructions given and the testimony adduced, the case was submitted to the jury, which returned a verdict in favor of the appellee. Judgment was entered in accordance with the verdict, from which is this appeal.

It is insisted by the appellant that the testimony of Feldman and the employee is so unreasonable as to make it obviously impossible for it to be true. While it may be improbable, we do not think it is of such a nature as to render it reasonably impossible for it to be true, and, under the settled rule that the jury are the judges of the credibility of the witnesses, we have no right to disregard that testimony, it not being of the character of that rejected by this court in *Waters Pierce Oil Co.* v. *Knisel,* 79 Ark. 608, 96 S. W. 342, and *Platt* v. *Owens,* 183 Ark. 261, 35 S. W. (2d) 358.

It is next insisted that the testimony was incompetent because it tended to vary and add to the written provisions of the order. On the other hand, the appellee contends that the purpose of the evidence was not to vary or contradict the terms of the contract, but to show that the contract offered in evidence by the appellant was not in fact the contract entered into, and, to sustain this position, relies on the cases of *Barton-Parker Mfg. Co.* v. *Taylor,* 78 Ark. 586, 94 S. W. 713; *Pickler* v. *Arkansas Packing Co.,* 112 Ark. 33, 164 S. W. 764; *Worthen* v. *Stewart,* 116 Ark. 306, 172 S. W. 855; *White Sewing Machine Co.* v. *Atkinson & Son,* 126 Ark. 206, 190 S. W. 111; *Case Threshing Mch. Co.* v. *Southwestern Veneer Co.,* 135 Ark. 607, 205 S. W. 978; *Pictorial Review Co.* v. *Rosen,* 171 Ark. 720, 285 S. W. 385; *New Home Sewing Machine Co.* v. *Westmoreland,* 183 Ark. 769, 38 S. W. (2d) 314.

Without reviewing these cases at length, it may be said that they are distinguishable from the case at bar, for in all of them the element of fraud entered into the procurement of contract and were conditions precedent to their validity. Here the contract was not induced by any fraudulent misrepresentation as to character of the article sold. It is unambiguous, executed in duplicate, signed by Feldman, and the copy kept by him. It negatives his contention that the goods were shipped to him for the account of the seller (*Reuter Milling Co.* v. *McKinney,* 170 Ark. 84, 278 S. W. 963), and shows an uncon-

ditional contract of purchase and sale. The testimony relative to the agreement to do specialty work and assist in the sale tended at best to establish merely an independent agreement collateral to the main issue, and was a promissory representation of an intention as to some act in the future. Such representations are not conditions precedent to the validity of the contract, and the failure to perform them does not entitle the buyer to disavow the contract and refuse the payment of the purchase price. Similar representations as in the instant case were considered in the cases of *Whitmore* v. *Scoggin*, 147 Ark. 236, 227 S. W. 610; *Stevens* v. *Chatfield*, 230 Ky. 194, 18 S. W. (2d) 1006; *Stevens* v. *Smotherman*, 223 Mo. App. 1078, 24 S. W. (2d) 670; *Security Savings Bank* v. *Capp*, 193 Iowa 278, 186 N. W. 927; *Marshall Mill Co.* v. *Hintz-Cameron Co.*, 156 Minn. 301; *Fleming* v. *Gerlinger Motor Car Co.*, 286 Or. 195, 168 Pac. 289. And in all of them the views we have reached were adopted. The court therefore erred in its declaration of law, and the judgment is reversed, and the cause remanded.